**STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Respondent,**

**v.**

**C. C. BOWLING, Gail Poor Bowling, Juliet Bowling Rollins and W. C. Bowling, Appellants.**

No. 51889.

Supreme Court of Missouri, En Banc.

May 8, 1967.

Robert L. Hyder, Thomas E. Cheatham, Jefferson City, for respondent.

Terence C. Porter, Columbia, for appellants, Welliver, Porter & Cleaveland, Columbia, of counsel.

STOCKARD, Commissioner.

In this action for condemnation of land for highway purposes the jury award of just compensation was $15,000, and the landowners have appealed. The difference between the award and that to which they claim they are entitled under the evidence exceeds $15,000.

The tract of land owned by appellants contained 29 acres and was located in the City of Columbia on the north side of Old U. S. Highway 40, now designated as Business Loop 70. The tract had approximately 1,000 feet frontage on Business Loop 70 with a depth of 1,320 feet. The southern 300 feet of the tract was zoned "C–3" for "highway business," and the remainder of the tract consisting of approximately 23 acres was zoned "R–1" for single family residences. For purposes of constructing a one-way ramp from Business Loop 70 to Route B the Highway Commission of Missouri obtained by condemnation in October 1963 a portion of the above described tract consisting of approximately 61,500 square feet. The portion taken was a strip bordering on Business Loop 70 and extending

westward from the eastern boundary a distance of 760 feet. At the east end the portion taken had a depth of 165 feet, the northern boundary was irregular, and the portion was 50 feet in depth at the west terminus.

As is frequently the case, there was a wide variance between the expert witnesses as to the damages sustained by appellants by reason of the appropriation. Appellants' witnesses placed the damages in various amounts ranging from $50,000 to $99,086. The witnesses of the State placed the damages from $1,526 to $9,100. The only issue on this appeal pertains to the refusal of the trial court to permit one of Appellants' witnesses to testify concerning the terms of an executory contract for the sale of nearby property.

Mr. Richard C. McDonnell, vice president of the Boone Realty Corporation, was a qualified expert witness called by appellants. He testified that he had made an appraisal of appellants' property on October 17, 1963, to determine the damages sustained by appellants by reason of the appropriation, and he stated that in arriving at his estimate of damages he took into consideration the physical features of the property and five recent sales of other comparable property which he described in detail. Before he stated the result of his appraisal of appellants' damages, he was asked if he had made an appraisal of "any tracts of land on Business Loop 70," and he replied that he had appraised "the southwest corner of Business Loop 70 and Old 63 South early in 1963" (known as the "Driv-a-teera tract") for a man in Chicago by the name of Aker. An objection was sustained when he was asked the result of that appraisal.

Mr. McDonnell then testified that the Driv-a-teera tract was the subject of a contract of sale entered into in April of 1965 and that he was aware of the terms of the contract. When asked "the amount of the sale price," an objection was made on the ground that "there is no showing that the sale is a finished sale." This objection was sustained, and appellants then made an offer of proof that if permitted the witness would testify "that he had personal knowledge and had verified the terms of a contract of sale for a tract of land located at the Southwest corner of Business Loop 70 and Business 63 South, * * * [that] the tract under contract contained 102,000 square feet, and the contract is dated April 30, 1965, and is between the owner, Mr. and Mrs. James Akers and the buyer MFA Central Cooperative, for a total consideration of $80,000. * * * The date of closing will be October 1, 1971. On the date of closing, [a] properly executed warranty deed [is to be delivered] containing the usual customary warranty pertaining to said real estate. The sum of $20,000 cash [is to be paid] on date of closing and the remainder of the purchase price, $60,000, will be evidenced by an unsecured corporate note. * * * [T]he purchaser under this agreement will hold the premises for a period of six years commencing October 1, 1965, and ending September 30, 1971, as lessee for a monthly rental of $400 a month. And the contract of purchase is as of the date at the end of the lease."

Although not uniformly applied in all states, see the annotation at 85 A.L.R. 2d 110, the rule has long been established in this state that evidence of the price paid by a willing purchaser to a willing seller for property comparable to that being appropriated for public use, when the sale was made reasonably near to the time of appropriation, is admissible to aid the triers of fact in determining the compensation to which the owner is entitled for the appropriation of his property. Kansas City & Grandview Railway Co. v. Haake, 331 Mo. 429, 53 S.W.2d 891, 84 A.L.R. 1477; State ex rel. State Highway Commission v. Koberna, Mo., 396 S.W.2d 654. There is no contention in this case by respondent that the land to which the contract of sale applied was not comparable to appellants' land, or that the contract was not bona fide in all

respects and entered into at arms length by a willing seller and purchaser.

Respondent asserts that the evidence was properly refused by reason of the rule in School Dist. of Clayton v. Kelsey, 355 Mo. 478, 196 S.W.2d 860. In that case, on the issue of the fair market value of the land taken by condemnation, the landowner offered in evidence a contract between him and another for the sale of a tract of land across the street from the land condemned. The contract was dated March 7, 1945, and the date for closing the transaction was June 7, 1945. After commenting that recent consummated sales of property in the neighborhood of the condemned property were competent on the issue of fair market value, this court further commented, "but we find no Missouri authority for the proposition that a sale contract, even though enforcible by specific performance, is competent," and then concluded that even though there was "nothing to suggest that the sale contract * * * was not bona fide in all respects, * * * to permit such contracts to be offered * * * would open the door to contracts made in bad faith and with no intention of completion and consummation." The evidence of the contract of sale was held to have been properly excluded.

◼ We cannot agree with the total exclusionary rule of the Kelsey case. The tendency is to admit evidence which reasonably sheds light on the question of fair compensation for the taking of land by condemnation. "Artificial rules of evidence which exclude from the jury matters which men consider in their everyday affairs hinder, rather than help, the arrival at a just result." State ex rel. State Highway Commission v. Barron, Mo., 400 S.W.2d 33, 37. See also 30 C.J.S. Eminent Domain § 430. In the determination of the value of land reasonable men in their everyday business affairs would take into consideration, substantially to the same extent as a consummated sale of comparable property, the price provided for in a bona fide and binding contract of sale entered into by a willing purchaser and seller when the sale price reflects the present value of the land contracted to be sold. It is a common practice for a contract of sale of land to provide for a reasonable period of time for the completion of details relating to the transfer or for the correction of title defects, and in such circumstances the sale price provided in the contract reflects the sale value of the land so conveyed as of the time of the contract. After the trial court has satisfied itself that the contract of sale is bona fide and without collusion and fraud, and that the period between the time the contract is entered into and the sale is to be completed is not of such duration that the price agreed upon constitutes a speculation of a future value, we see no reason why evidence of the sale price in such a contract should automatically be excluded from consideration by the jury solely because the actual transfer of title has not yet occurred. See United States of America v. Certain Parcels of Land in the City of Philadelphia, 3 Cir., 144 F.2d 626, 155 A.L.R. 253. This does not mean, however, that all bona fide executory contracts for the sale of comparable land should be admitted into evidence. The landowner cannot show speculative future uses of his own land to enhance its value, nor can he show an estimate of what his property will be worth at a future day or in an altered condition. In re Armory Site in Kansas City, Mo., 282 S.W.2d 464; Brewer v. Blue Mountain Consolidated Water Co., 126 Pa.Super. 553, 191 A. 408. For the same reason the landowner should not be entitled to show, as bearing on the market value of his land at the time of the taking, the speculative value of a comparable piece of property at some future date.

◼ Respondent has not urged on this appeal that the ruling of the trial court was proper for any reason other than that stated in the Kelsey case. However, Civil Rule 83.13(b), V.A.M.R., provides that no appellate court shall reverse any judgment, unless it believes that error was com-

mitted by the trial court against the appellant, materially affecting the merits of the action. Even though we do not agree with the total exclusionary rule announced in the Kelsey case, we are compelled to conclude that in the circumstances shown by the offer of proof the trial court did not commit error against the appellant in refusing to admit evidence of the price provided for in the contract of sale.

■ The issue before the jury was the just compensation to which appellants were entitled for the taking of a portion of their property, and that was to be determined as of the time of the appropriation. KAMO Electric Cooperative, Inc., v. Baker, 365 Mo. 814, 287 S.W.2d 858. This just compensation consisted of the fair and reasonable market value in October 1963 of the land taken, and the consequential damages sustained by appellants to the remainder of their land by the taking of the part. KAMO Electric Cooperative, Inc., v. Baker, supra; City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839; Union Electric Company v. Saale, Mo., 377 S.W.2d 427. Stated another way, it was the difference between the fair and reasonable market value of their entire tract of land immediately before and immediately after the taking. State ex rel. State Highway Commission v. Kendrick, Mo., 383 S.W.2d 740. Evidence of the sale price of other comparable land (when otherwise competent) is admissible because it tends to afford a basis for the determination by the triers of fact of the fair and reasonable market value of the land taken as of the time of the appropriation. State ex rel. State Highway Commission v. Koberna, Mo., 396 S.W.2d 654, 662. Therefore, in order to afford a basis for comparison the price paid for other comparable land should reasonably reflect the value of that land at the time of the appropriation of the land condemned. In this case, in April of 1965 the owners of the comparable land agreed that six years and five months later, or approximately eight years after the date of taking of appellants' land, the fair market value of the land covered by the contract would then be $80,000. In view of the probabilities of inflation and the changing uses for land in the neighborhood, the parties to the contract were in April of 1965 speculating on the value of the land in October 1971. The present value of a right to purchase land six and one half years in the future does not necessarily reflect the fair and reasonable market value of the land at the time of the agreement, and without any more showing than the existence of the contract and the price to be paid, such evidence is not material. To permit the evidence offered in this case to be submitted to the jury on the issue of the market value of appellants' land on the date of appropriation would inject such elements of speculation and conjecture as to confuse the issue and mislead the jury. For this reason, we conclude that the evidence of the price contracted to be paid in October 1971 for the comparable land was properly rejected.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court en Banc.

EAGER, J., concurs in separate concurring opinion filed.

STORCKMAN, C. J., and DONNELLY, J., concur in result in separate opinions filed.

HENLEY, J., concurs in result.

FINCH, J., dissents in separate opinion filed.

HOLMAN and SEILER, JJ., dissent and concur in separate dissenting opinion of FINCH, J.

## CONCURRING OPINION

EAGER, Judge.

I concur, but I express the opinion that, in view of Commissioner Stockard's opinion, the rule of total exclusion of contracts of sale announced in the case of School District of Clayton v. Kelsey, 355 Mo. 478, 196 S.W.2d 860, should be expressly overruled. It is also my understanding that, by this present concurring opinion and the dissent of three other Judges it is now overruled.

## OPINION CONCURRING IN RESULT

DONNELLY, Judge.

In School District of Clayton v. Kelsey, 355 Mo. 478, 484, 196 S.W.2d 860, 863, it was held that an unconsummated contract for the sale of neighboring property was not competent on market value because "to permit such contracts to be offered * * * would open the door to contracts made in bad faith and with no intention of completion and consummation."

I believe this *general* rule of exclusion is sound and I would follow it in this case.

I concur in result.

## OPINION CONCURRING IN RESULT

STORCKMAN, Chief Justice.

The majority opinion justifies the refusal to admit the contract of sale in evidence solely on this ground: "To permit the evidence offered in this case to be submitted to the jury on the issue of the market value of appellants' land on the date of appropriation would inject such elements of speculation and conjecture as to confuse the issue and mislead the jury." I agree with this statement. For the same reason, evidence of a sale completed *before* the taking could be

properly excluded. The extent of the trial judge's discretion in this area is described in 32 C.J.S., Evidence § 593(3) c, p. 742, as follows: "No general rules can be laid down as to the degree of similarity required to exist between the properties, and as to the nearness in respect of time and distance, and these matters, and the reception of evidence of sales of other property generally, rest largely in the discretion of the trial judge. Thus the evidence may in such discretion be rejected, especially when other and better evidence can be or has been produced at the hearing." This statement of the rule is supported by City of St. Louis v. Vasquez, Mo., 341 S.W.2d 389, and In re Armory Site in Kansas City, Mo., 282 S.W.2d 464. See also 29A C.J.S., Eminent Domain § 273(10), pp. 1209–1211.

For this reason I say that the criticism of the holding in School District of Clayton v. Kelsey, 355 Mo. 478, 196 S.W.2d 860, is entirely gratuitous and unnecessary. Even if the rule were otherwise than as stated in the Kelsey case, the trial judge in his discretion should be affirmed in excluding this evidence. I cannot agree with that part of the majority opinion which criticizes and disapproves the Kelsey case because what is said in that regard is obiter dictum and is likely to cause endless confusion. The time to reexamine the soundness of Kelsey is when it is squarely presented as the decisive factor in the ruling.

I agree with what is said in the concurring opinion of Judge Donnelly. The general rule of exclusion as stated in Kelsey appears to be sound. Furthermore, I believe it is the general policy to exclude evidence of sales made *after* the date of taking regardless of whether it is a completed sale or merely executory. There are sound reasons for doing so,—one of which is that the taking for public use may affect the value of comparable land in the vicinity, adversely as well as favorably. The cases relied on by Judge Finch in his dissenting opinion are all cases in which the completed sale was

made a considerable time *before* the date of taking. Any change in value in such cases cannot be said to have been influenced by the use—whether it be for a public utility or highway purposes. It is much easier to adjust the value of the land taken by working forward than to adjust by working backward from a sale made after the taking, whether it be based on a completed deed or an executory contract.

While sales of comparable land not too remote in point of time are generally admissible on the question of the value of the land being condemned, it is well recognized that discretion should be exercised by the court in preventing controversies arising on collateral matters and thus diverting the attention of the jury to minor issues. City of St. Louis v. Kisling, Mo., 318 S.W.2d 221, 226 [10]. New elements and collateral issues that would be involved in determining the value of comparable land under a contract of sale to be completed after the taking of the land in question would be whether the contract of sale was valid and enforceable by specific performance, whether the contract was made in good faith and whether the sale price of the land under contract was influenced either adversely or favorably by the public use for which the land in question was taken. The wisdom of the Kelsey exclusionary rule is demonstrated by the statement in the dissenting opinion of Judge Finch that, "We do not know what motivated the different format for deferring the time and method of payment." The explanation given in the dissenting opinion apparently is not based on anything in evidence.

I can see no need for expanding the scope of evidence of value in condemnation cases to include these collateral issues and additional speculative elements. The cases demonstrate that the evidence of expert witnesses and of sales completed *before* the taking of the land in question is generally available and sufficient to give the jury some reliable standards on which to assess the damages.

Since I do not agree with the treatment accorded the Kelsey case in the majority opinion, I concur in the result only.

## DISSENTING OPINION

FINCH, Judge.

I respectfully dissent herein.

The majority opinion concludes that the sale price which was involved in the defendants' offer of proof was based on speculation of the parties as to what the property would be worth in October 1971 because payment of the $80,000 is postponed until October 1971 and thereafter and the deed is to be delivered in October 1971. I disagree. This was a currently executed, binding, written contract to sell and buy, respectively. There is nothing to indicate that the parties are speculating as to a future value. Rather, they simply provided for a deferred method of payment and closing which is a little unusual. If the deed to the property had been delivered at the time of the contract, with a note and deed of trust for $80,000, payable $20,000 on October 1, 1971, and the remainder thereafter, with interest at six per cent, there would have been no question but that this was a current sale, and evidence of the sale price would have been admissible in this case. Counsel for the Highway Commission so conceded in oral argument. Simple arithmetic shows that interest at six per cent on $80,000 is $4800 per year, or the equivalent of the $400 per month which MFA was to pay until October of 1971 under this contract of purchase. We do not know what motivated the different format for deferring the time and method of payment. It may have been a desire by MFA to defer the immediate accrual of the total purchase price, but, in my view, that is immaterial. It still is a currently negotiated sales price.

Another method which might have been used would have been a contract for a deed with the deed to be held in escrow. If such a contract had called for payments of $400

per month until October 1, 1971, with a payment of $20,000 at that time and the remaining $60,000 subsequently, and with a deed to be delivered when the $20,000 was paid, can there be any question but that this would have been a present sale, with the evidence of the sale price admissible herein?

The purpose of condemnation trials is to determine reasonable compensation for that which the condemnor is taking. Value of the property taken is not exact but must be determined by the jury from all the evidence submitted to it. The court seeks to give the jury the benefit of all evidence which will assist it in performing that task. The tendency is to admit all evidence which reasonably sheds light on this question of fair compensation. As stated in State ex rel. State Highway Commission v. Barron, Mo., 400 S.W.2d 33, 37, "Artificial rules of evidence which exclude from the jury matters which men consider in their everyday affairs hinder, rather than help, the arrival at a just result."

The rule is further elaborated in State ex rel. State Highway Commission v. Koberna, Mo., 396 S.W.2d 654, 662, as follows: "The general rule is that evidence of the sale price of property similarly located to that involved, and made in the neighborhood reasonably near the time of taking, is admissible to aid the triers of fact in determining the compensation to which the owner is entitled for the taking of the property." Subsequently, in the same paragraph, the court states further: "Unless the distance in location, or the difference in time of sale from the time of taking, or the lack of similarity be so great as to make the evidence, as a matter of law, not material or relevant, such differences go to the weight of the evidence rather than to its admissibility."

When these rules are applied, how can it be said that the evidence involved in the offer of proof herein was inadmissible? Certainly, individuals or companies considering the purchase of the tract condemned would consider this MFA sale in determining what, in their judgment, would be a proper sale price. They would not be misled by the method of payment and would accord weight to the transaction as their judgment would dictate, just as a jury weighs the evidence submitted to it.

The majority opinion says that admission of the evidence of this MFA transaction "would inject such elements of speculation and conjecture as to confuse the issue and mislead the jury." I find it most difficult to square this conclusion with some of our previously decided cases. As the old saying goes, "Let's look at the record."

In the recent banc case of Land Clearance Authority v. Doerenhoefer, Mo., 404 S.W. 2d 385, this court dealt with a condemnation in the City of St. Louis and held admissible what the owner had paid for the condemned property when he acquired it nine years before the time of taking. This was held to be true even though the court recognized that during the nine-year period the Veterans Bridge across the Mississippi River and the Third Street Highway were opened, construction of the riverfront memorial project was begun, construction of the Gateway Arch was started, the old Courthouse at Fourth and Market Streets was made a national monument, and various other buildings were constructed or renovated in the neighborhood which upgraded it. The majority opinion states, 1. c. 386: "The purchase price was relevant evidence in helping the jury to arrive at its verdict." Subsequently, in the opinion the court says: "The jury could reasonably have concluded that over the nine-year period since the purchase, and in view of the improvements made by Esses and the upgrading of the neighborhood, the fair market value of the property had increased by the amount of $15,000." The spread of nine years and the material changes in the neighborhood and in the property itself did not cause the majority to hold the evidence inadmissible. The fact that the transaction occurred nine years before and under conditions recognized to be different did not

cause the exclusion of the evidence as injecting "elements of speculation and conjecture" which would confuse the jury. Rather, these were things which the court recognized would go to the weight of the evidence in its consideration by the jury.

In State ex rel. State Highway Commission v. Koberna, Mo., 396 S.W.2d 654, this court held admissible evidence of the sale of comparable land which had occurred approximately five years before the time of taking in condemnation. Again, the court recognized that the lapse of time would go to the weight of the testimony and that the parties had an opportunity to, and did undertake to so demonstrate to the jury.

In State ex rel. State Highway Commission v. Johnson, Mo., 287 S.W.2d 835, this court held admissible evidence as to what the owner had paid for the property being condemned when he purchased it twenty-five years before, and in City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149, the court held admissible evidence as to value nine years before the time of taking, even though the great depression had intervened between the purchase and the time of taking.

It will be observed that in some of these cases the span of time between the condemnation and the date as of which value was offered was greater than the span of time between the MFA transaction and its date of consummation in October 1971, but in each of these reported cases the court admitted the evidence, leaving its weight and value to the jury.

Consider also the expert opinion evidence which was admitted in this case. Evidence on behalf of the landowner as to value of the property taken ranged from a high of $99,086 down to about $50,000. Evidence on behalf of the State ranged from a low of $1526 to a high of $9100. The high estimate of damages was sixty-four times the amount of the low estimate of damages. That evidence was admitted as sufficiently reliable to go to the jury to consider and weigh. It

is arguable that this tremendous spread would confuse and mislead the jury and, in the language of the majority opinion, perhaps inject "elements of speculation and conjecture," but under our rules of evidence we admit it for the jury to consider and weigh. If that is proper, how can we possibly say that evidence as to an actually executed, arm's length contract of sale between responsible parties as to a comparable nearby tract is inadmissible because it might confuse or mislead the jury simply because its timing as to method of payment was different? At least, this transaction represented what actual owners and a business firm purchaser contracted and agreed to pay in real money therefor, whereas the opinion evidence is not backed by a nickel of anyone's money and represents expert opinion and nothing more. If we admit the opinion evidence which was received in this case on the theory it is sufficiently reliable for the jury to consider, but exclude evidence of the MFA contract of purchase and sale on the basis that it injects "such elements of speculation and conjecture as to confuse the issue and mislead the jury," it seems to me that we strain at the gnat and swallow the camel.

The majority opinion properly criticizes the rule, announced in School District of Clayton v. Kelsey, 355 Mo. 478, 196 S.W.2d 860, that evidence of the sale price in a contract of sale which was executory rather than finally consummated was inadmissible. The majority opinion refused to sustain the action of the trial court on the basis of the rule in that case. Instead, as above indicated, it held the evidence inadmissible on the basis that the sale price involved was a speculative one as of a date in the future. The majority opinion does not specifically state that the Kelsey case is overruled on that point. I would so state because, in my judgment, that rule is wrong, and I would so state in order to avoid any confusion about the matter in the future.

It should be noted that a majority of the court does consider that the total exclu-

sionary rule of Kelsey is wrong. The opinion written in Division by Commissioner Stockard and promulgated herein as the court en banc opinion criticizes the rule and would admit evidence of the contract price when the trial court has satisfied itself on such issues as comparability of the property, bona fides of the contract and proximity in time of the sale. Judge Eager concurs in Stockard's opinion and in what it says about Kelsey and has stated in a concurring opinion that it should be overruled. Judges Holman, Seiler and the writer are of the opinion that the Kelsey rule is wrong and should be expressly overruled.