**STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Plaintiff-Appellant,**

v.

**GRAVOIS FARMERS CLUB et al., On Exceptions of Margaret E. Horman et al., Defendants,**

**Margaret E. Horman, Defendant-Respondent.**

No. 34314.

Missouri Court of Appeals, St. Louis District, Division One.

July 25, 1972.

Robert L. Hyder, Chief Counsel, Jefferson City, R. Jon Bopp, Asst. Counsel, Kirkwood, for plaintiff-appellant.

John T. Sluggett, III, Clayton, for defendant-respondent.

BRADY, Chief Judge.

Plaintiff initiated this action to condemn certain properties in St. Louis County for highway construction. The Commissioners awarded defendant $6,000.00 as compensation and plaintiff filed exceptions to the award as excessive. After a trial, the jury returned a verdict of $4,000.00 for defendant. Defendant thereafter filed a motion for a new trial which was sustained. Plaintiff appeals.

Defendant's property consists of approximately one acre of land situated at an intersection in St. Louis County. The taking of the property by plaintiff occurred on June 11, 1968. The property condemned consisted of 4,051 square feet or a reduction of a 15-foot strip along that part of the property fronting on Gravois Road.

The defendant's evidence showed that prior to the taking in 1968 negotiations had been conducted with three separate oil companies for the purchase of the property but that after the taking negotiations had terminated. Defendant's expert witness, who had conducted these negotiations, stated that prior to the taking the value of the property was $80,000.00, and after the taking the value had been reduced to $50,000.00 resulting in damages of $30,-000.00. Plaintiff's evidence on the other hand consisted of testimony by two real estate appraisers who assessed the value of the land taken at $3,000.00 and $3,160.00.

Plaintiff's last witness was a real estate agent for Texaco Oil Company, one of the oil companies which had negotiated with defendant prior to 1968. He stated Texaco had negotiated for the property and had executed an option contract in the latter part of 1970. The witness did not state whether he had been the one who negotiated the contract. He did not have the contract with him and he had no personal knowledge of the contract other than what he had been told in a letter from the Texaco legal department. Out of the hearing of the jury the court asked plaintiff's attorney the purpose of his inquiry. The attorney replied that he intended to show the property was still desirable for commercial use and that an option contract had been executed for the property in excess of $80,000.00, in fact, for $157,000.00. The record reflects the following colloquy: "MR. BOPP: I don't want to go into precisely how much it is, but the fact that it is still being desired by Texeco (sic) and get into why an option is based on rezoning. * * * THE COURT: He can testify it is desirable, but he can't testify to what it is worth or what they would pay for it. * * * THE COURT: You may inquire of the witness if the property is rezoned whether it would be of commercial value. Proceed. No amounts should be given."

Plaintiff's attorney then resumed his direct examination of the witness in which he asked several questions regarding the terms of the option contract. The majority of the questions were objected to as violating the best evidence rule.[1] Plaintiff then asked if the witness had the contract with him or if he had any evidence that the contract had been accepted. The witness produced a letter (not contained in the record and not admitted into evidence) from his company's legal department. The witness was asked: "Q Mr. Keim, do you, of your own personal knowledge, know the option price on the subject property? MR. SLUGGETT: I object to that, your Honor, unless he fixes the time and unless the contract is disclosed, fully disclosed. THE COURT: Sustained. BY MR. BOPP: I just asked if he had any personal knowledge. THE COURT: He can answer that, I suppose, yes or no. A I can answer it yes or no only by what I just produced, being able to read. BY MR. BOPP: Q Is that price in excess of $80,000.00? MR. SLUGGETT: I object to that, if your Honor, please." Mr. Sluggett, defense attorney, also asked for a mistrial and the court indicated that it would reserve ruling on the motion. The defense attorney conducted a brief cross examination during which he renewed his motion for a mistrial and the court again reserved its ruling. Thereafter the plaintiff rested and the defendant indicated no rebuttal evidence would be offered.

Defendant's motion for a new trial alleged that the court erred in not granting defendant's motion for a mistrial based on the highly prejudicial reference to the price of $80,000.00 in plaintiff's question to the witness.[2] The court sustained defendant's motion for a new trial but did not set out the grounds for its decision.

The failure of the trial court to specify the grounds for granting a new trial in violation of Rule 75.01, V.A.M.R. raises a presumption that the motion was erroneously granted and imposes upon the respondent the burden of supporting such action. Rule 84.05(b), V.A.M.R. However, the respondent meets that burden if he demonstrates that the motion should have been sustained on some ground alleged therein. Artstein v. Pallo, Mo., 388 S.W.2d 877, 1. c. [1], and cases there cited.

As in all cases of this nature, the issue before the jury was the difference between the fair and reasonable market value of the property immediately before and immediately after the taking. The rule is well established in this state that evidence of the price paid for property comparable to that being appropriated for public use, when the sale is made *reasonably near to the time* of appropriation, is admissible to aid the triers of fact in determining the compensation to which the owner is entitled. State ex rel. State Highway Commission v. Bowling, Mo., 414 S.W.2d 551, 1. c. [1]. Necessarily, the actual admissibility of evidence of this nature must be left in large part to the sound discretion of the trial court. In re Armory Site in Kansas City, Mo., 282 S.W.2d 464, 1. c. [23]. While there are cases holding sales as much as nine years before the taking to be admissible we are not aware of any decision where a sale subsequent to the taking by a period of over two years has been held admissible.

In light of the foregoing, there is no doubt but that the question propounded by plaintiff's attorney was improper. The trial court had determined in its discretion and on the objection of the defendant that the contract executed in late 1970 was too

1. These rulings were not preserved for our review.

2. Defendant also alleged that prejudicial error was committed by the court when it reserved its ruling on the motion. However, defendant has not urged this point on appeal.

remote in time from the taking on June 11, 1968, and therefore the evidence of price should not be given. This ruling was correct. The reasoning of the Supreme Court in *Bowling, supra,* compels this conclusion. In *Bowling* the evidence was an executed sales contract the final payment of which was to be made six years hence and thus held too remote. Here we are concerned with evidence about an option contract the terms of which were not revealed to the court and which apparently was based on several contingencies, not the least of which was the buyer's willingness to pay the price at the time. Under these conditions the court had no alternative but to declare the evidence of price inadmissible.[3] If plaintiff thought the evidence admissible it was incumbent upon him by offer of proof or otherwise to show it to be admissible. In re Armory Site in Kansas City, *supra,* 1. c. [24]. This he did not do.

Even more regrettable is plaintiff's action in direct contradiction of the court's ruling. Counsel was aware of the ruling and obviously understood it because he said: "I don't want to go into precisely how much it is, * * *." We cannot assume he forgot the ruling because immediately before he asked the question defendant objected to references to the contract on the ground that the time was not fixed or, in other words, too remote. This objection was sustained. Yet plaintiff's very next question was whether the price was in excess of $80,000.00. Whether inadvertent or intentional, such action cannot be condoned.

 The remaining issue is whether the asking of this question was such a grievous incident that the prejudicial effect could only be removed by declaration of a mistrial. Brownridge v. Leslie, Mo., 450 S.W 2d 214, 1. c. [3]. Both the declaration of a mistrial and the granting of a new trial are matters left largely to the discretion of the trial court. The trial court observes the incident giving rise to the request for a mis-

trial and is in a far better position to evaluate the prejudicial effect created by it. An appellate court's function is only to determine if the trial court abused its discretion as a matter of law. State v. Ward, Mo., 457 S.W.2d 701, 1. c. 709.

 The trial court did not deny the motion for mistrial but reserved its ruling thereon. When presented for reconsideration in the motion for new trial, the court must have determined that a mistrial should have been granted. In view of the jury's verdict of $4,000.00 which was substantially below that sought by defendant and even below that awarded by the Commissioners, we cannot say with any degree of certainty that the jury was not influenced by the improper question or that the error was not prejudicial to defendant. Deferring to the trial court's discretion we cannot say that granting a new trial because of the failure to declare a mistrial was an abuse of discretion as a matter of law.

 Plaintiff argues that defendant waived his motion for a mistrial by failing to reassert it at the close of all the evidence. In support of their position plaintiff cites State ex rel. State Highway Commission v. Ogle, Mo.App., 402 S.W.2d 605; and State ex rel. State Highway Commission v. Rauscher Chevrolet Co., Mo., 291 S.W.2d 89. Both of these cases involved failure of appellants to raise a motion to strike prior evidence when subsequent evidence showed it to be inadmissible. Neither case involved a motion for a mistrial and neither is controlling or persuasive in determining the issue here involved.

 Plaintiff next argues by analogy that since our decision in Miller v. Haynes, Mo. App., 454 S.W.2d 293 requires allegations of excessiveness of a verdict before considering the prejudicial nature of error, so also must defendant urge inadequacy of a verdict to establish prejudice. The decision in *Miller* clearly demonstrates the reservations this writer had about applying

3. Assuming arguendo that an option contract would be admissible at all under the exclusionary rule of School Dist. of Clay-

ton v. Kelsey, 355 Mo. 478, 196 S.W.2d 860, as modified in State ex rel. State Highway Commission v. Bowling, *supra.*

the rule requiring allegations of excessiveness before consideration of allegations of prejudicial error (see Anderson v. Bell, Mo., 303 S.W.2d 93) in view of repeated decisions that incompetent evidence on a material issue is rebuttably presumed prejudicial. See Schears v. Missouri Pac. R. Co., Mo., 355 S.W.2d 314, l. c. 318 [2]; Union Elec. Co. v. Menkhaus, Mo.App., 370 S.W. 2d 619, l. c. 622 [4]; and State ex rel. Berberich v. Haid, 333 Mo. 1224, 64 S.W.2d 667 [4]. In any event we refuse to extend the holding in *Anderson, supra,* to require allegations of inadequacy as a prerequisite to considering allegation of prejudicial error.

Plaintiff's final argument is that since the question was not answered there was no prejudice. We find no merit to this contention. The jury heard that which it should not have and what counsel was told he should not elicit from the witness; i. e., the sum of $80,000.00. Given that fact we cannot say the trial court abused its discretion in holding there was prejudice requiring its action granting a new trial.

Judgment affirmed.

WEIER and CLEMENS, JJ., concur.