THE SCHOOL DISTRICT OF CLAYTON ET AL. v. CYRENE KELSEY, Appellant.—No. 39695.—196 S. W. (2d) 860.

Division One, July 8, 1946.

Opinion Modified on Court's own Motion and Motion for Rehearing or to Transfer to Banc Overruled, September 9, 1946, in Opinion Filed.

Motion for Rehearing or to Transfer to Banc on Modified Opinion Overruled, October 14, 1946.

*Harold C. Ackert* for appellant; *Ackert, Giesecke & Waugh* of counsel.

480

*John A. Nolan* for respondents.

BRADLEY, C.—Plaintiff school district and the members of its board of education filed suit to condemn for school purposes certain described lots, owned by defendant, in the City of Clayton, St. Louis County. Commissioners were appointed; made report; both sides filed exceptions and damages were submitted to a jury. The jury assessed defendant's damages at $34,500, and judgment was entered on the verdict. The amount of damages fixed by the jury was paid into the registry of the court for defendant. Unsuccessful in motion for new trial defendant appealed.

Error is assigned (1) on overruling defendant's motion to set aside the order appointing commissioners and to quash their report; (2) on excluding defendant's exhibit No. 5; (3) on refusing defendant's instruction A; and (4) on refusing to grant a new trial on the ground that damages awarded were inadequate.

The motion to set aside the order appointing commissioners and to quash their report was bottomed on the contentions that there was, prior to filing the petition, no bona fide effort made by plaintiffs to agree with defendant on the compensation to be paid for the land condemned, and that the suit to condemn was not brought in good faith, and that there was no public need for the property. Sec. 1504, R. S. 1939, Mo. R. S. A., Sec. 1504, pertains to condemnation proceedings and among other things, provides that in case land is sought to be appropriated and the condemnor "and the owners cannot agree upon the proper compensation to be paid", then condemnation proceedings may be instituted. Inability of the parties to agree upon compensation to be paid is jurisdictional and must be pleaded. State ex rel. State Highway Commission v. Williams et al. (Mo. App.),

69 S. W. (2d) 970, l. c. 971, and cases there cited. It follows that if it is necessary to so plead, then it is necessary to so prove, and such is conceded.

The petition alleged and the court found that plaintiffs and defendant had been unable to agree upon the compensation to be paid, but defendant contends that there was no substantial evidence to support such finding. On a hearing of the motion to set aside the order appointing the commissioners and to quash their report, which motion was based on the contention that there was no bona fide effort to agree on compensation, etc., defendant called as witnesses the president of the board of education, the superintendent of the Clayton schools and the vice president of the real estate company which handled the recent sale to the school district of the Wagoner land, near plaintiff's land. At a meeting of the board of education April 19, 1944 (petition was filed July 28, 1944), Mr. Bracken, the superintendent, was authorized to offer defendant $15,000 for her land, lots 5 and 6, and 11 and 12, block 19, Hanley's Addition, Clayton. The offer was made by letter and was refused by a letter in reply. It appeared from the evidence on the motion that in making an effort to agree upon the compensation to be paid for the Wagoner land, interested parties appeared before the board of education, and other negotiations and efforts were made to agree. In defendant's case there was no direct evidence of effort at negotiation except the letter offering $15,000 and the reply refusing the offer. But Mr. Friday, president of the board of education, testified that defendant was advised by letter that she could come before the board if she wanted to.

And Mr. Friday, in response to a question by counsel for defendant, said that "somebody in the (board) meeting (June 19, 1944) mentioned that Miss Kelsey (defendant) not only turned down the $15,000 offer, but she said she would turn down three times that much." No explanation appears as to what occasioned such remark by defendant, but apparently the board regarded defendant's refusal as final unless the offer was much more than $15,000. At the meeting of the board of education on June 19, 1944, the minutes recite that agreement with defendant on compensation to be paid could not be made and condemnation was ordered.

There is nothing in the record that would justify overturning the order of the trial court overruling defendant's motion to set aside the order appointing commissioners and to quash their report on the ground that there was no bona fide effort made to agree with defendant on the compensation to be paid her for the land. And there is nothing in the record that would justify overturning the ruling on the theory that the condemnation was not in good faith and that there was no public need for the property. The court found that "the plaintiffs have endeavored to agree with defendant as to the proper amount of compensation to be paid to said defendant, for the

lands and properties sought to be appropriated, but that they were unable so to agree with the said defendant; that it is a public necessity to acquire said lands and properties for the purposes of an addition to the area of the public school owned by plaintiffs." Neither is there any evidence of bad faith on the part of plaintiffs, and such being so, good faith or motive of plaintiffs is not a subject for our consideration. City of Kirkwood v. Venable et al., 351 Mo. 460, 173 S. W. (2d) 8, 1. c. 12; McQuillin On Municipal Corporations (2d Ed.), Sec. 1588; 20 C. J., p. 552, Sec. 38; 29 C. J. S., p. 820, Sec. 30; 1 Lewis On Eminent Domain (3rd Ed.), p. 678, Sec. 370.

■ Defendant's exhibit 5 was a sales contract between defendant and Adlyne Freund for the sale of defendant's lot on the south side of Forsythe and across the street from the property condemned. The sale price was $12,322, or $200 per front foot. Defendant offered this contract on the issue of fair market value. On this issue defendant offered two types, we may say, of evidence. First, she offered evidence of sale value of other and similar property in the immediate neighborhood of the property condemned, and second, evidence of experts as to the fair market value of the condemned property. Plaintiffs offered but one type of evidence, that of experts. Defendant's evidence showed front foot sale price of 12 parcels of land or lots fronting on Forsythe, and in the neighborhood of the property condemned. Of these 12 sales the highest front foot sale price was $552 and the lowest $114.28, an average of $294.16. Defendant's 3 expert witnesses testified that the reasonable market value of the condemned property was $200 per front foot, while plaintiff's 4 expert witnesses gave the value per front foot, highest $100, lowest $75, an average of $85. The jury's verdict for $34,500 was $114.23 per front foot. But location, improvements and depths of lots (area in square feet) were all determining factors on front foot value. There were two buildings on defendant's condemned property, but plaintiffs' witnesses did not regard these as affecting the fair market value of the property.

Defendant's exhibit 5 was excluded on the ground that it was an executory contract to sell and not a contract of a completed and consummated sale. The contract was dated March 7, 1945, and was signed for defendant by her agent. The first paragraph was: "Received of Adlyne Freund the sum of $500 earnest deposit, and as a part of the cash consideration for a certain parcel of unimproved property, situated in the County of St. Louis, State of Missouri, to wit (description), which property is this day sold to said Adlyne Freund subject to the approval of the owner and not otherwise for the total sum of $12,322, payable as follows, all cash to be paid at time of closing deal."

The contract further provided: "The sale under this contract is to be closed on or before June 7, 1945, and if not closed ■ by

that date, owing to the failure or neglect of the purchaser to comply with the terms herein, said deposit is to be forfeited to the seller, but for this cause the buyer shall not be released from the fulfillment of his part of this contract, if so determined by the seller. In event of forfeiture of earnest deposit the seller hereby agrees to give, and the agent hereby agrees to accept, as compensation for services rendered in negotiating this transaction, the earnest deposit herein receipted for, provided, however, that if said deposit exceeds the amount of commission hereafter provided for, the excess shall go to the seller.'' The contract was on a printed form, but just above the signature of defendant's agent handling the matter, was a pen notation signed by defendant's agent: ''If this deal is not consummated by 6/7/45, seller is to receive ½ of E. M., namely, $250.''

Recent consummated sale values of property in the neighborhood of the condemned property was competent on the issue of market value, City of St. Louis v. Sheahan et ux., 327 Mo. 305, 36 S. W. (2d) 951; Kansas City v. Boruff et al., 295 Mo. 28, 243 S. W. 167; St. Louis, Keokuk & N. W. Ry. Co. v. Clark et al., 121 Mo. 169, 25 S. W. 192, but we find no Missouri authority for the proposition that a sale contract, even though enforcible by specific performance, is competent.

In support of this assignment appellant cites Crystal Lake Park District v. Consumers Company et al., 313 Ill. 395, 145 N. E. 215; United States v. Certain Parcels of Land in Philadelphia et al., 144 Fed. (2d) 626. The Illinois case, in effect, rules that an unexecuted contract for sale of land is not competent on market value, but does not rule that an executed contract is competent. In the Federal case the land involved was in Pennsylvania, and under the law of Pennsylvania a contract for sale of land was not competent on market value. But it seems that a different rule prevailed in the federal court. We do not consider the federal case sufficiently persuasive. There is nothing to suggest that the sale contract, exhibit 5, was not bona fide in all respects, but to permit such contracts to be offered, as sought here, would open the door to contracts made in bad faith and with no intention of completion and consummation. We rule that exhibit 5 was properly excluded.

Instruction A would have permitted the jury, in determining defendant's damages, to have taken into consideration the value of what is termed the 10 days option given a condemnor under Sec. 1506, R. S. 1939, Mo. R. S. A., Sec. 1506. This section provides that when the commissioners have assessed the damages, filed their report, etc., the condemnor ''shall pay to the said clerk the amount thus assessed, for the party in whose favor such damages have been assessed; and on making such payment it shall be lawful for such company (condemnor) to hold the interest in the property so appropriated for the uses aforesaid; and upon failure to pay the assessment aforesaid, the court may, upon motion and notice by the party entitled

to such damages, enforce the payment of the same by execution unless the said company shall, within ten days from the return of such assessment, elect to abandon the proposed appropriation of any parcel of land, by an instrument in writing to that effect, to be filed with the clerk of said court, and entered on the minutes of the court, and as to so much as is thus abandoned the assessment of damages shall be void.''

In the brief defendant says: ''The foregoing section (1506) of the statute clearly gave the plaintiffs ten days after the jury verdict within which to abandon their condemnation. In other words, the plaintiffs, if they were wholly dissatisfied with the verdict, could simply abandon. They are given the right by the statute to know the jury's verdict before being irrevocably bound to proceed. The defendant had no similar right. She is forced to sell regardless of the amount of damages awarded her. The plaintiffs in reality receive, as a result of the jury's verdict, a ten day unilateral, irrevocable option to buy. The ▮▮▮ defendant receives only such compensation or consideration for this option as the jury may grant therefor in its verdict. The jury must, therefore, be advised of the true situation so that they may include in their verdict just compensation for this option which the statute grants. They should clearly be instructed that they are fixing the compensation for a ten day option as well as a sale price if the option is exercised. . . . Failure to so instruct runs afoul of the injunction of the state Constitution against the taking of private property (option on defendant's property) without just compensation (Missouri Constitution of 1945, Art. 1, Secs. 26 to 28) and the federal requirement of due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States.''

In support of the assignment on the refusal of instruction A defendant cites State ex rel. State Highway Commission v. Deutschman et al., 346 Mo. 755, 142 S. W. (2d) 1025; Union Electric Lt. & P. Co. v. Snyder Estate Co. et al., 65 Fed. (2d) 297. We find nothing in either of these cases, or in any other, on a research of our own, to support the assignment based on the refusal of instruction A. There was no evidence at all on the value of what defendant terms the 10 days option by operation of law (Sec. 1506), hence there was, in the first place, no evidence to support instruction A, and second, under the statute, Sec. 1504, R. S. 1939, the value of the land appropriated is to be fixed as of the day appropriated. Defendant's land was not *appropriated* until the jury assessed her damages and the amount thereof paid into the registry of the court. State ex rel. State Highway Com. v. Deutschman et al., 346 Mo. 755, 142 S. W. (2d) 1025, l. c. 1029. It appears that the commissioners filed their report October 14, 1944; while the jury returned its verdict assessing defendant's damages on May 23, 1945, and the amount thereof, $34,500, was paid into the

registry of the court the next day, May 24th. Instruction A was properly refused.

The last assignment is that the court erred in refusing a new trial on the ground that damages awarded were inadequate. With nothing more than the front foot sale price evidence, it would appear that there is a wide margin between some of the front foot sale prices of the 12 sales and defendant's award per front foot, but the margin is not so great when considered on a square foot sale price, that is, when lot depths are considered. Example, the sale price of the Wagoner property, sold to plaintiffs, just across the street east from defendant's property, was approximately 50 cents per square foot, while the award to defendant was approximately $1.14 per square foot, and this figure does not take into consideration that part of defendant's property, front and back, which could not be actually occupied by a building because of a zoning ordinance of the City of Clayton. As to whether that feature figured in the square foot sale price of the Wagoner property does not appear.

An appellate court will not disturb an award of damages in condemnation when the award is supported by substantial evidence even though the evidence on the issue of damages is conflicting. Prairie Pipe Company v. Shipp et al., 305 Mo. 663, 267 S. W. 647, l. c. 650, and cases there cited. See also City of St. Louis v. Franklin Bank et al., 340 Mo. 383, 100 S. W. (2d) 924; City of St. Louis v. Smith et al., 325 Mo. 471, 30 S. W. (2d) 729.

Plaintiffs (respondents) filed motion to strike a portion of defendant's printed abstract. In view of the conclusion we have reached it will not be necessary to rule the motion on its merits, but in order to dispose of it, the motion is overruled.

The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.