STATE ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Relator,

v.

The Honorable David ANDERSON, Judge of the Circuit Court of Greene County, Missouri, Respondent.

No. 68446.

Supreme Court of Missouri, En Banc.

July 14, 1987.

Rehearing Denied Sept. 15, 1987.

John H. Gladden, Judy Curran, Asst. Counsels, Bruce A. Ring, Chief Counsel, Springfield, for relator.

Phillip R. Garrison, Springfield, for respondent.

WELLIVER, Judge.

Relator, the Missouri Highway and Transportation Commission seeks writs of prohibition and mandamus directed at prohibiting Greene County Circuit Judge Anderson from issuing two subpoenas duces tecum to relator's two land appraisers.[1] The Court of Appeals, Southern District, issued preliminary writs which were quashed by opinion. We transferred the case to examine the existing law. Mo. Const. art. V, § 10. We make the alternative writ of mandamus peremptory and the preliminary writ of prohibition absolute. We have borrowed extensively from the dissenting opinion filed by Flanigan, J., in the Court of Appeals, Southern District.

## I

This case stems from relator's March 30, 1984, petition to condemn land owned by South Springfield Farm, Ronald K. Stenger, Neil K. Stenger, and Springfield Land Company. The land is sought by relator as a part of a highway project utilizing federal funds.

On May 4, 1984, the owners filed motions to dismiss and for an evidentiary hearing on the jurisdictional phase of the condemnation. On February 27, 1985, the owners filed Notice to Take Depositions and a Motion to Compel, both of which relator moved to quash. On March 5, 1985, the circuit court sustained the Motion to Quash. The owners sought writs of prohibition and mandamus which the Court of Appeals, Southern District, and this Court denied.

---

1. In order for this proceeding to avoid getting into the nebulous area of "mandabition" or "prohidamus," we would point out that the circuit judge already has issued the subpoenas duces tecum and already has overruled the motions to quash the subpoenas. Granting relief to relator would, of necessity, require ordering and mandamusing that the subpoenas be quashed and prohibiting reissuance of the subpoenas in the future. Had the circuit judge notified relator that he intended to issue the subpoenas and that he would grant relator time within which to seek prohibition, then prohibition would have been the only writ required to raise all issues. Our discussion, we believe, should be in terms of the case being postured as prohibition.

On April 3, 1985, the circuit court, at the request of the owners, issued subpoenas duces tecum to two of relator's appraisers, Mr. Les Sage and Mr. Jack Bennett. The subpoenas directed Sage and Bennett to produce all notes, memoranda, summaries, or written documents which they had used in making their precondemnation appraisals for the relator. On April 4, 1985, relator moved to quash the subpoenas. On April 5, respondent, Judge Anderson, overruled the Motion To Quash the subpoenas duces tecum.

Relator sought and obtained in the Court of Appeals, Southern District, the Alternative Writ of Mandamus and the Preliminary Writ of Prohibition, both later quashed by opinion. We transferred.

## II

The landowners, through the respondent circuit judge, base their right to have the subpoenas duces tecum issued on two grounds: (1) that the owners of the condemned property are entitled to question and contest the court's jurisdiction to proceed further in the underlying condemnation action by contesting whether relator has complied with the prerequisites imposed by *State ex rel. Weatherby Advertising v. Conley,* 527 S.W.2d 334 (Mo. banc 1975), and that the materials sought by the subpoenas are necessary for that purpose; and (2) that since *State ex rel. State Highway Commission v. Jensen,* 362 S.W.2d 568 (Mo. banc 1962), the work product privilege has been abrogated by Rule 56.-01(b)(3), and that Rule 56.01(b)(4)(b) did not change the status of the documents sought in this case from work product, but rather provided a method whereby, under some circumstances, they would be subject to discovery.

For the reasons which follow, we conclude that neither ground is valid. We shall discuss the second ground first.

## A

Condemnation under Missouri law contemplates a two-step procedure described and set forth in Chapter 523, RSMo 1986,[2] and Rule 86. Both the statutes and our rule describe the procedure we have devised for balancing the right of government to appropriate private property for the use and benefit of the public against the right of every person to be fairly and fully compensated for the taking of the property for public use. Both the statutes and our rule contemplate a two-step process.

First, the court must determine whether the condemnation is authorized by law— *i.e.:* is there jurisdiction over the condemnation proceeding.... [H]as the condemning authority complied with the conditions precedent to bringing the action (*State ex rel. Weatherby Advertising Co., Inc. v. Conley,* 527 S.W.2d 334 (Mo. banc 1975))....

Secondly, the court must establish the landowner's damages from the taking. At that stage, commissioners are appointed to assess the landowner's damages and upon payment of the commissioners' award the condemning authority acquires the property and may proceed to utilize it as prayed in its petition for condemnation. Either party may request a jury trial to establish the landowner's damages and only after that trial has concluded is the case appealable.

*State ex rel. Devanssay v. McGuire,* 622 S.W.2d 323, 325 (Mo.App.1981).

This two-step process has an extremely important function. It guarantees to the public early commencement of the project while preserving to the individual landowners the right at a later date to extensively and thoroughly litigate all issues relating to damages for the taking. If the purpose of the condemnation is to build a road across Missouri from St. Louis to Kansas City, a single objecting landowner has no right to delay the commencement of the project for months or years by interrogatories, depositions, discovery or dilatory practices. The two-step process does not contemplate extensive litigation at the first stage which is prior to the order of condemnation. It is a hearing on the peti-

---

**2.** All references herein are to RSMo 1986, unless otherwise indicated.

tion which Rule 86.04 requires to contain, among other things

> a statement of the foundation of the plaintiff's right to condemn the property involved in the condemnation proceedings; a general statement of the nature of the business, improvement or use for which the property is to be taken; a statement either that the condemner or owner can not agree on the proper compensation to be paid or that an owner is incapable of contracting, is unknown, can not be found or is a non-resident of the state; if any right of way be sought, the location and general route thereof shall be described and a copy of the construction plans required by Section 227.050 of the Revised Statutes of Missouri, 1949, shall be filed in the circuit clerk's office and made a part of each condemnation petition by reference; ...

Rule 86.04.

We do not minimize the importance of the initial hearing, which is the one involved here. This hearing "is much more than a preliminary hearing on a pretrial motion." *Washington University Medical Center v. Komen,* 637 S.W.2d 51, 54 (Mo. App.1982). It is "an evidentiary hearing in which the right or power of the condemner to condemn the property in question is finally adjudicated." *Washington University Medical Center v. Komen,* 637 S.W.2d at 54. In *State ex rel. State Highway Commission v. Dalton,* 498 S.W.2d 801 (Mo. banc 1973), the trial court entered an order pertaining to discovery after the initial hearing had been held and before the issue of damages was tried to a jury. This Court recognized that "In the generally accepted sense, the trial of the basic action had not started at the time the challenged order was entered." *Dalton,* 498 S.W.2d at 802.

As a practical matter, the precise extent of the landowners' damage is the paramount issue only in the second stage. The damages are ascertained by determining the fair market value of the property "immediately before the taking." MAI 9.01. "Under our statutes and our condemnation cases, the taking of the property occurs when the condemner pays the commissioners' award into the registry of the court, or if it refuses to make such payment, as is true in this case, at the time of trial." *State ex rel. Washington University v. Gaertner,* 626 S.W.2d 373, 375 (Mo. banc 1982). In the instant case the "taking" has not yet occurred. The value of the property "immediately before the taking" cannot yet be ascertained. With respect to making appraisals of the landowners' property at the present time, the commission and the landowners are on equal footing. Each side is able to make its own appraisal without obtaining information from the other.

In *State ex rel. Weatherby Advertising v. Conley,* 527 S.W.2d 334, 336 (Mo. banc 1975), this Court said: "It is well established in Missouri that allegation and proof that the condemner and property owners have been unable to agree on compensation to be paid for the property being taken is jurisdictional." *Weatherby,* 527 S.W.2d at 336. Section 523.010 authorizes the filing of condemnation proceedings only where the condemner and the owners cannot agree upon the proper compensation to be paid. *Weatherby,* 527 S.W.2d at 336. The petition should allege enough to show that bona fide negotiations have occurred but that the parties were unable to arrive at a settlement. *Weatherby,* 527 S.W.2d at 336–37.

In *City of Blue Springs v. Central Development,* 684 S.W.2d 44 (Mo.App.1984), the court spoke of the "jurisdictional requirement that the condemner and property owner have been unable to agree on the compensation to be paid for the property being taken." 684 S.W.2d at 48. The court said,

> [T]o satisfy the statutory requirements of § 523.010 RSMo the condemners' evidence must show that a valid offer was made by one party, usually the condemner, and rejected by the other.... Missouri case law indicates the relationship between the offer and the market value of the property to be condemned is not significant in the determination of good faith. An offer need not be a particular amount—merely sufficient to create a binding contract. *See* Note, *Pre-*

*liminary Requirements for Condemnation in Missouri: Necessity, Public Use, and Good Faith Negotiations,* 44 Mo.L. Rev. 503, 511 (1979).

*City of Blue Springs,* 684 S.W.2d at 48-49.

The foregoing language, which we believe to be an accurate statement of the Missouri law, would indicate that the niceties of the manner in which an appraiser arrived at his appraisal, and perhaps even the appraisal itself, have no real significance at the initial hearing, which is the one involved here.

In *School District of Clayton v. Kelsey,* 196 S.W.2d 860 (Mo.1946), we held an offer of $15,000 to be in good faith, even though the jury returned a damage verdict of $34,-500. In *Shelby County R–IV School District v. Herman,* 392 S.W.2d 609 (Mo.1965), we held an offer which was only one-sixth of the landowner's alleged damages to be in good faith. In *State v. Cady,* 400 S.W.2d 481 (Mo.App.1965), the court held an offer of no money to be in good faith in light of benefits that the landowner would receive, though the landowner claimed $2,800 in damages. Most recently, in *City of Columbia v. Baurichter,* 713 S.W.2d 263 (Mo. banc 1986), this Court held that all that is required for jurisdiction to attach is an uncontested allegation that good faith negotiations could not be had for the reason that the owners were unknown, could not be located, or could not be determined.

Clearly, the relationship between the market value of the property and the offer is not of material significance in determining the existence of the good faith negotiations required by § 523.010 and Rule 86.04.

Rule 56.01, which contains "General Provisions Concerning Discovery," became effective on January 1, 1975. Prior to that date this Court, in three cases, *State ex rel. State Highway Commission v. Dalton,* 498 S.W.2d 801 (Mo. banc 1973); *State ex rel. State Highway Commission v. Kalivas,* 484 S.W.2d 292 (Mo.1972); *State v. Jensen,* 362 S.W.2d 568 (Mo. banc 1962), and had occasion to consider the discoverability of the notes and memoranda of appraisers in condemnation actions. In all, this Court denied discovery.

In *Jensen,* between the initial hearing and the jury trial, the landowners sought to take the depositions of three appraisers who had been hired by the Highway Commission and who were expected to be called as witnesses in the trial. The appraisers had done their work before the condemnation action was filed. The landowners served notice to take the depositions and obtained an order of the trial court directing the appraisers to produce memoranda and notes of the type sought here. At that time the pertinent Rule provided:

> The examining party may not inquire as to the contents or substance of statements, written or oral, obtained from prospective witnesses by or on behalf of another party. The production or inspection of any writing obtained or prepared by the adverse party or coparty, his attorney, surety, indemnitor, or agent, in anticipation of litigation or in preparation for trial, ... or of any writing that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, or, except as provided in Rule 60.01, the conclusions of an expert, shall not be required.

Rule 57.01.

This Court said:

> Under the law, the relator State Highway Commission was not authorized to file a condemnation suit to appropriate the property in question unless an agreement could not be reached as to the compensation to be paid the owners. Relator would not be in a position to bargain with the owners until it had, through its agents, made an investigation as to the value of the property. In such a situation, the condemner, herein the State Highway Commission, was justified in anticipating that litigation might follow. In the circumstances, we rule that the work product in question is privileged as having been prepared *by relator's agent in anticipation of litigation.*

*Jensen,* 362 S.W.2d at 569–70 (emphasis added).

This Court also held that it was of no moment that the memoranda were prepared before the condemnation action was

filed and ten months before the commissioners filed their report.

In *State ex rel. State Highway Commission v. Kalivas*, 484 S.W.2d 292 (Mo.1972), the landowner in a condemnation case hired three appraisers, but at the jury trial used only two of them. On cross-examination of the landowner, the commission elicited the fact that the landowner had employed appraiser number three, and that fact was commented upon by the commission's attorney in his final argument. The Court held that appraiser number three was available for the commission to call as its own witness and that "[appraisers in a condemnation action] are to be treated as any other so-called expert witness." *State Highway Commission v. Kalivas*, 484 S.W.2d at 295.

The Court said:

> However, we do not depart from our ruling in *Jensen, supra*, that, prior to trial, the opinion of an appraiser as to damages in a condemnation suit is to be considered work product and not subject to discovery. *As discussed in Jensen, such an approach is mandatory if we are to allow the jurisdictional requirement for 'negotiations' before condemnation to continue to have any legitimate status or meaningful purpose in such proceedings.*

*Kalivas*, 484 S.W.2d at 295 (emphasis added).

In *State ex rel. State Highway Commission v. Dalton*, 498 S.W.2d 801 (Mo. banc 1973), in which the Highway Commission was the condemner, an order of condemnation was entered at the initial hearing. Later the trial court entered an order that the commission's expert witnesses "divulge their conclusions as reflected in appraisal reports which they prepared at the request of and for [the commission]." *Dalton*, 498 S.W.2d at 801.

Again this Court, quoting *Jensen*, held "that the work product in question is privileged as having been prepared by relator's agent in anticipation of litigation." *Dalton*, 498 S.W.2d at 802, quoting *Jensen*, 362 S.W.2d at 570. The trial court had

based its ruling in part on its feeling that "the trial of this cause" had "begun and [was] in progress for the purpose of these rulings." *Dalton*, 498 S.W.2d at 802.

The Court said:

> "Although somewhat presumptuous, it is perhaps fair to say that the trial court's reasoning was premised on prior appellate opinions which prohibited such inquiry for the reason, among other, that: 'as discussed in *Jensen*, such an approach is mandatory if we are to allow the jurisdictional requirement for "negotiations" before condemnation to continue to have any legitimate status or meaningful purpose in such proceedings.' *State ex rel. State Highway Commission v. Kalivas*, 484 S.W.2d 292, 295 (Mo.1972). However, there were and are other reasons for the conclusion reached in *Jensen*. For example, Rule 57.01(b), pertaining to discovery, specifically provides, in part, that: 'The production or inspection of any writing obtained or prepared by the adverse party ... that reflects ... except as provided in Rule 60.01 [pertaining to physical and mental examinations] the *conclusion of an expert*, shall not be required.' Interpretation of that portion of the rule has been consistent and recognized as such."

*Dalton*, 498 S.W.2d at 802 (emphasis added).

The Court, in *Jensen*, held that the appraiser's memoranda was work product and was privileged as having been prepared by the commission's agent in anticipation of litigation. In *Dalton*, this Court held that the memoranda were not discoverable for the additional reason that they constituted conclusions of an expert. Did the adoption of Rule 56.01 in 1975 constitute a departure from these reasonings?

Rule 56.01(a) enumerates six discovery methods, two of which are interrogatories and depositions.

Rule 56.01(b)(1) confines itself to the discovery of "any matter, not privileged." [3]

**3.** The language of Rule 56.01(b)(1) is contained in Rule 26(b)(1) of the Federal Rules of Civil

Procedure. With regard to the latter rule a leading commentator has said:

(Emphasis added.) Rule 56.01(b)(3) deals with the discovery of documents and tangible things "otherwise discoverable under subdivision (b)(1) of this Rule." If the matter sought is "privileged," it is not discoverable under Rule 56.01(b)(3).

Rule 56.01(b)(4) deals with "discovery of facts known and opinions held by experts." This rule is also subject to the limitation contained in Rule 56.01(b)(1) that the matter be "not privileged."

Rule 56.01(b)(3) opens with the language, "Subject to the provisions of subdivision (b)(4) of this Rule." Thus, if the matter sought to be discovered constitutes "facts known and opinions held by experts," Rule 56.01(b)(3) does not come into play at all and the exclusive methods of discovery of that matter are set forth in and limited by Rule 56.01(b)(4). Those methods are interrogatories and depositions. They do not include the issuance of subpoenas duces tecum in connection with a hearing.

If, which we do not believe, witnesses Sage and Bennett are not experts, their memoranda and notes are protected from discovery either because they are "privileged," as held in *Jensen, Kalivas* and *Dalton*, or because they are protected by the following language in Rule 56.01(b)(3): "[I]n ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the *mental impressions, conclusions, opinions, or legal theories of an attorney or any other representative of a party* concerning the litigation." (Emphasis added.) The protection is afforded even if the landowners made the "required showing" of "substantial need" and "hardship," although it is clear that no such showing was made here.

■ On the other hand, if Sage and Bennett are experts, as both sides at least tacitly concede, the exclusive methods for obtaining their opinions and the facts known to them are found in Rule 56.-

01(b)(4). In order to be experts within Rule 56.01(b)(4), Sage and Bennett must be "person[s] whom the other party expects to call as an expert witness at trial." Even if the initial hearing be considered a "trial," contrary to the statement made in *Dalton*, 498 S.W.2d at 802, there is no showing by the landowners that the commission expects to call either of them at the initial hearing. Further, landowners are not seeking discovery by interrogatories or deposition. No portion of Rule 56.01 permits the landowners to discover the notes, memoranda, summaries or written documents used in making the appraisals for the relator.

We are unable to foresee or hypothesize circumstances where the pleadings or proof required by § 523.010 or Rule 86.04 would require discovery and its attendant delay at stage one of a condemnation proceeding.

### B

The landowners' contention that they must have the items sought in subpoenas duces tecum in order to contest relator's compliance with *Weatherby* compels our examination of the effect of *Weatherby*. As a first step in examining the effect of *Weatherby*, a careful review of its facts may be helpful.

Weatherby Outdoor Sign owned sign structures on leased land adjacent to existing highways, which land was sought to be condemned by the Highway Commission for the building of new and wider highways. *Weatherby* indicates that a Boone County and a Callaway County case were consolidated therein. In the Boone County case, referred to in *Weatherby*, Weatherby had one sign on tract eight, owned by Riddick. Riddick terminated the sign lease and settled with the Highway Commission. "Thereafter Commission filed a petition in [the Boone County case] naming only relator [Weatherby] as a defendant as to parcel

---

Rule 26(b) provides for discovery regarding matters 'not privileged.' The term 'privileged,' as used in Rule 26(b), corresponds with the concept of privilege as developed in the law of evidence. Therefore, the scope of privilege in discovery is neither broader nor narrower than that which would be applied at trial....

4 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* § 26.60 (2d ed. 1985).

8."[4] *Weatherby,* 527 S.W.2d at 335. In the Callaway County case, Weatherby owned two signs on tract fifteen owned by Sutterfield and one sign on parcel twenty-four owned by Bemac, Inc. Sutterfield refused an offer and Bemac, Inc. accepted an offer after terminating the sign lease. "No offer has been made to Relator [Weatherby] with reference to its signs on either tract." *Weatherby,* 527 S.W.2d at 335. The opinion recites that Weatherby filed answers and counterclaims wherein it asserted the commission's failure to make an offer as a prerequisite to condemnation under traditional condemnation law and also alleged failure to comply with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4651–4655, enacted January 2, 1971.

The commission filed a Motion to Dismiss the counterclaims. The circuit court overruled the motion and entered the order of condemnation.

> No ruling specifically dealing with the counterclaims was entered, but the parties appear to be in agreement that the trial court indicated that it believed the orders of condemnation had disposed of the counterclaims.

*Weatherby,* 527 S.W.2d at 335.[5]

Prohibition was denied by the Court of Appeals, Western District. This Court issued its preliminary writ of prohibition which was made absolute.

No allegations were made in the commission's petitions filed against Weatherby that either appraisals or offers had been made, nor was any such proof offered at hearing. Prohibition, if justified based upon the so-called agreement about what the circuit court may have intended to do, would lie only to prohibit the appointment of appraisers and further proceedings. That right to prohibition having been conceded, the additional holding that the commission had to plead and prove the requirements of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 would appear to be dictum totally unnecessary to the decision of the case.

No rights of discovery were either asserted in *Weatherby* or authorized by *Weatherby.* At most, it held that it was necessary to plead and prove compliance with the federal statutes.

The purported holding of *Weatherby* in effect mandated a judicial review of the Highway Commission's compliance with federal laws entitling it to federal funds as a prerequisite to entry of the order of condemnation in every condemnation case involving federal funds.

Perhaps, when *Weatherby* was written in 1975, there may have been those who feared that federal contributions to highway funds might be lost by the Highway Commission's noncompliance with federal requirements. Today such concern appears unnecessary. We are able to locate no case in these United States where a condemnee failed to collect a condemnation award by reason of withdrawal of federal funds.

The legislative history of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4651–4655, enacted January 2, 1971, and the cases from other jurisdictions do not indicate that proof of state compliance with the act was intended by the Congress to be a condition precedent to condemnation in state courts.

■ Congress intended 42 U.S.C. § 4651–4655 to be a matter between the federal agencies handling funds, and the relator at the state level. *See City of Mishawaka v. Sara,* 396 N.E.2d 946 (Ind. Ct.App.1979) where the Indiana Court of Appeals held:

> [T]he policies set forth in § 4651 ... are advisory only, *United States v. 416.81 Acres of Land* (7th Cir.1975) 525 F.2d

---

4. We presume this to mean that the original petition in condemnation was amended as it related to Riddick, tract eight.

5. If the counterclaims were "disposed of," appeal would appear to be the appropriate remedy. If they were not disposed of, neither appeal nor prohibition was appropriate and the entire case is dictum, if anything.

450, at 454; *Paramount Farms, Inc. v. Morton,* (7th Cir.1975) 527 F.2d 1301, 1305, and they create no right in the condemnee to judicial review of an agency's property acquisition practices. *City of Mishawaka,* 396 N.E.2d 946, 947 (citation omitted). In *Barnhart v. Brinegar,* 362 F.Supp. 464 (W.D.Mo.1973), the District Court held:

> This completes our review of the history of the "no rights or liabilities" language of [42 U.S.C. § 4602(a)]. From this history, we believe one conclusion is irresistible—Congress intended Section [4602(a)] to preclude judicial review of federal and state agency actions under the real property acquisition practices of [42 U.S.C. § 4651].

*Barnhart,* 362 F.Supp. at 472 (footnotes omitted).

In *Nall Motors v. Iowa City, Iowa,* 533 F.2d 381 (8th Cir.1976), the Eighth Circuit reviewed the district court record, and affirmed in a memorandum opinion on the basis of the district court memorandum. The District Court for the Southern District of Iowa held, referring to the decision in *Barnhart,* 362 F.Supp. 464 (W.D.Mo. 1975) said:

> In the courts opinion this view of § 4651 is the correct one. Plaintiffs are entitled to no relief for the claimed violations thereof. Section 4602(a) clearly and convincingly evinces an attempt to preclude judicial review of agency action under § 4651....

*Nall Motors, Inc. v. Iowa City, Iowa,* 410 F.Supp. 111, 115 (S.D. Iowa 1975).

■ As can be seen by the foregoing, 42 U.S.C. § 4651 does not grant the owners in this case any reviewable rights. There-fore, it stands to reason that owners are not entitled to discovery on matters allegedly covered by 42 U.S.C. § 4651–4655 by subpoenas duces tecum or otherwise.

We do not believe that the Missouri General Assembly intended § 226.150, relied on by *Weatherby,* to change or alter our law of eminent domain as set forth in Chapter 523 and Rule 86.[6] We do not believe that the legislature intended a judicial review of the Highway Commission's compliance with federal funding laws in every condemnation proceeding where federal funds are utilized. To the extent that *Weatherby* and its progeny have so held, they may no longer be relied upon or followed.

The subpoenas duces tecum should be quashed and their reissuance prohibited.[7]

The alternative writ of mandamus is made peremptory and the preliminary writ of prohibition is made absolute.

BILLINGS, C.J., and BLACKMAR, DONNELLY, ROBERTSON and HIGGINS, JJ., concur.

RENDLEN, J., dissents in separate opinion filed.

RENDLEN, Judge, dissenting.

For the reasons here discussed, I respectfully dissent.

In this action for mandamus and prohibition originally brought in the Court of Appeals, Southern District, that Court issued its preliminary rule in prohibition and alternative writ of mandamus and on final determination quashed the writs. We consider the case as an original proceeding.

In the underlying cause the Missouri Highway and Transportation Commission

---

**6.** That part of § 226.150, quoted by the majority in *Weatherby* first appeared in the Missouri statutes as a part of the Centennial Road Law, adopted in 1921, to get Missouri out of the mud. Sec. 16, Laws of Mo.1921 (first extra session, p. 132 and 138). In those days right-of-way gifts were made by adjoining owners in return for hard surfaced roads. It is difficult to imagine that members of that General Assembly intended, or even dreamed that § 226.150 would in 1975 be used by this Court in connection with a 1971 congressional act to change the law of eminent domain of the state of Missouri.

**7.** "Prohibition or a 'writ of prohibition' is that process by which a superior court prevents inferior courts, tribunals, officers, or persons from usurping or exercising a jurisdiction with which they have not been vested by law." 73 C.J.S. *Prohibition* § 2 (1983). *See State ex rel. Eggers v. Enright,* 609 S.W.2d 381 (Mo. banc 1980). A writ of prohibition lies to prevent a judge from acting outside his jurisdiction in discovery matters. *State ex rel. Albert v. Adams,* 540 S.W.2d 26 (Mo. banc 1976).

seeks to condemn the private lands of two owners for use in a highway project utilizing federal funds. Drawing upon the well reasoned opinion of Titus, P.J., by which the Southern District quashed its preliminary rule and alternative writ the question, aptly put by relator is: Whether "the owners [of property to be condemned in a suit involving federal highway aid funds] are entitled to discover, by means of Subpoena Duces Tecum the reports, notes, memoranda, summaries or written documents, made or used by Messrs. Sage and Bennett [relator's appraisers], in appraising the owners [sic] land at the hearing for the appointment of Commissioners."

The propriety of discovery is a matter within the sound discretion of the trial court, and we should not disturb its ruling except for abuse of that discretion. *State ex rel. Kuehl v. Baker,* 663 S.W.2d 410, 411 (Mo.App.1983). However, prohibition and mandamus may sparingly be employed to review a trial court's overruling of objections to discovery on grounds that the matters sought are privileged or constitute work product, if it can be seen that the refusal to forbid discovery exceeds the trial court's jurisdiction or constitutes a clear abuse of discretion. *St. Louis Little Rock Hosp., Inc. v. Gaertner,* 682 S.W.2d 146, 148 (Mo.App.1984).

In this proceeding to prohibit the circuit court from enforcing its order authorizing issuance of a subpoena duces tecum allowing the condemnees to obtain the records of relator's appraisers, relator has the burden of demonstrating that the circuit court *lacked jurisdiction* or *exceeded its jurisdiction* in issuing the order. *State ex rel. Eggers v. Enright,* 609 S.W.2d 381, 382 (Mo. banc 1980); *State ex rel. Land Clearance for Redevelopment Authority of Kansas City v. Southern,* 284 S.W.2d 893, 896 (Mo.App.1955). There is, of course, a presumption that the trial court has acted within its jurisdiction, *State ex rel. Martin v. Peters,* 649 S.W.2d 561, 563 (Mo.App. 1983); *State ex rel. City of Maplewood v. Crandall,* 569 S.W.2d 338, 340 (Mo.App. 1978) and it is important that we not substitute our discretion for that of the trial

court exercised within the legitimate boundaries of its jurisdiction. *Crackerneck Country Club, Inc. v. Sprinkle,* 485 S.W.2d 652, 655 (Mo.App.1972). Further, we should be mindful that prohibition issues with great caution and only in cases where the judicial usurpation of jurisdiction or act in excess of the same is clearly evident. *State ex rel. Eggers,* 609 S.W.2d at 382; *State ex rel. McDonnell Douglas Corp. v. Gaertner,* 601 S.W.2d 295, 296 (Mo.App.1980); *State ex rel. Deering Milliken, Inc. v. Meyer,* 449 S.W.2d 870, 873 (Mo.App.1970). This is especially true in preliminary stages of proceedings involving trial courts' rulings on *discovery questions.* We have in such cases steadfastly refused to interfere except in those rare instances where the trial court has stepped openly beyond the limits of its authority.

Relator urges that in condemnation proceedings the ordinary rules of civil procedure do not apply prior to the filing of exceptions. It argues instead that the statutes and special rules on condemnation govern such proceedings, citing *State ex rel. State Highway Commission v. Green,* 305 S.W.2d 688 (Mo.1957), and *State ex rel. State Highway Commission v. James,* 115 S.W.2d 225 (Mo.App.1938). However, these cases do not support relator's assertion as they merely state that *after* exceptions are filed, condemnation proceedings are to be governed by the rules of civil procedure. *Green,* 305 S.W.2d at 694; *James,* 115 S.W.2d at 226. There is no indication from these cases which rules of procedure govern *prior* to the filing of exceptions and relator suggests no other authority on the subject. Further, the cited cases were decided long before *State ex rel. Weatherby Advertising Company, Inc. v. Conley,* 527 S.W.2d 334 (Mo. banc 1975).

In *Weatherby,* we held that the allegation and proof that condemnor and property owners had been unable to agree on compensation to be paid for property being taken is jurisdictional, *id.* at 336, and that the legislature through § 226.150, RSMo

1969 [1] instructed the Highway Commission as to appraisal, negotiation and settlement offers and directed that it comply with the requirements spelled out in 42 U.S.C. §§ 4651, 4652 and 4655,[2] in those instances where, as here, federal highway aid is involved. *Weatherby*, 527 S.W.2d at 341. Meeting the criteria of these sections is a jurisdictional prerequisite for the appointment of commissioners *or for the court to proceed* further until the condemnor *complies* therewith and amends its petition to include the proper allegations. *Id.* at 341–42.

Relator argues that though the Court has held the requirements of *Weatherby* must be pleaded and proved, it has not required that discovery may be had concerning these jurisdictional requirements. Relator contends:

> In a condemnation suit where the requirements of *Weatherby* are to be imposed, the hearing for the appointment of commissioners is the appropriate time to raise the issues imposed by *Weatherby*. The requirements of *Weatherby* in this case have been pleaded, and relator now merely asks the opportunity to offer proof on them. If given the opportunity to offer proof, relator is confident the Respondent will find compliance, and determine it has jurisdiction to appoint the commissioners.

While I agree that the appropriate time to finally determine the jurisdictional prerequisites of *Weatherby* is at the hearing to

---

**1.** Section 226.150, RSMo 1986, unchanged in pertinent part states:

> The commission is hereby directed to comply with the provisions of any act of Congress providing for the distribution and expenditure of funds of the United States appropriated by Congress for highway construction, and to comply with any of the rules or conditions made by the Bureau of Public Roads of the Department of Agriculture, or other branch of the United States government, acting under the provisions of federal law in order to secure to the state of Missouri funds allotted to this state by the United States government for highway construction. (Emphasis added.)

**2.** These requirements were found to and continue to include:

(1) appraisal of the property before negotiation, with an opportunity for the owner to

appoint commissioners, the error in the remainder of relator's argument is manifest.

The condemnation hearing is an evidentiary proceeding in which the right of the condemnor *to condemn the property in question is finally adjudicated,* the order of taking is entered and the substantive rights of the parties regarding the ownership of the property are determined. *Washington University Medical Center Redevelopment Corp. v. Komen,* 637 S.W.2d 51, 54 (Mo.App.1982). In addition, it has been stated that in this portion of the proceedings:

> [T]he court must determine whether the condemnation is authorized by law—i.e.: is there jurisdiction over the condemnation proceeding. This determination may involve one or more of several requirements—is there constitutional, statutory or ordinance authority for the exercise of eminent domain (citation omitted); is the taking for a public use (citations omitted); has the condemning authority complied with the conditions precedent to bringing the action. (Citation omitted.) The trial court's determination on these issues, favorable to the plaintiff is not appealable. (Citation omitted.)

*State ex rel. Devanssay v. McGuire,* 622 S.W.2d 323, 325 (Mo.App.1981).

While this first segment of a condemnation proceeding does not determine the extent of compensation due, *Washington University,* 637 S.W.2d at 53–54, it is not a perfunctory proceeding for as noted above, in this vital stage of the case, the *order of*

---

accompany the appraiser, (2) determination of the sum by which buildings, structures or other improvements which belong to tenants contribute to the fair market value of the real property to be acquired and, in the alternative, the fair market value of the structure for removal, (3) establishment of just compensation for the property to be acquired, which shall be no less than the approved appraisal, (4) furnishing the owner with a written statement of, and summary of the basis for, the amount established as just compensation, and (5) making an offer of the just compensation so established to the owner.

*State ex rel. Weatherby Advertising Company, Inc. v. Conley,* 527 S.W.2d 334, 341 (Mo. banc 1975).

*taking is entered* and the *substantive rights* of the condemnee are adjudicated. Yet relator urges that it be allowed to proceed without permitting the landowners the right of discovery to challenge the Highway Commission's pleadings or proof. In effect relator demands and the majority today condone an unfettered power in the condemning agency to avoid discovery and conceal facts in its control bearing on the central statutory issue in question. By any standard of fairness, the owners of the property soon to be condemned are entitled to question the court's jurisdiction to proceed by contesting whether relator has complied with the previously discussed conditions precedent imposed by the law.[3] These prerequisites to jurisdiction become a hollow sham absent the right of the condemnee to discover by lawful means the necessary information to challenge the condemnor's assertion that they have been met.

Relator further argues that *Weatherby* is not involved because the principles announced there apply only in cases where there has been no appraisals of the property and the condemnor has made no allegations that such has been done. I cannot agree, as the plain language of *Weatherby* states that these are conditions precedent to the court's proceeding further with a condemnation suit "until the Commission complies therewith." 527 S.W.2d at 341-42. Such rationale is not confined to the limited factual situations relator suggests.

Examining now the discoverable nature of the documents sought by duces tecum, in *State ex rel. State Highway Commission v. Jensen,* 362 S.W.2d 568, 571 (Mo. banc 1962) it was held that letters, memoranda or notes prepared by appraisers for the highway department were exempt from discovery as work product prepared in anticipation of litigation. A decade later we reexpressed the view that the opinion of appraisers as to damages in condemnation suits were to be considered work product and not subject to discovery in *State ex rel. State Highway Commission v. Kalivas,* 484 S.W.2d 292, 295 (Mo.1972). Relator now argues that the documents sought (of the same type as those sought in *Jensen* ) are the work product of relator and under the teachings of that case are not discoverable. However, relator fails to take into account that since *Jensen* the work product

---

**3.** Besides complying with the federal prerequisites contained in 42 U.S.C. §§ 4651, 4652 and 4655, the condemning authority has always been required by this Court to engage in good faith negotiations aimed at settling and avoiding condemnation. *Weatherby,* 527 S.W.2d at 341. *See also* Note, *Preliminary Requirements For Condemnation In Missouri: Necessity, Public Use, And Good Faith Negotiations,* 44 Mo.L.Rev. 503, 509 (1979) (hereinafter *Preliminary Requirements For Condemnation* ). Following a brief discussion of several cases, the majority somehow concludes that those cases stand for the proposition that the amount offered by a condemning authority "is not of material significance in determining the existence of the good faith negotiations required...." *Ante,* at 7. Initially, the condemnor has the burden of proving good faith, however, once that burden is satisfied the condemnee must demonstrate a lack of good faith. *See Preliminary Requirements For Condemnation,* 44 Mo.L.Rev. at 509. All of the cases cited by the majority merely that a substantial disparity between the appraised value and the actual award *by itself* does not satisfy a condemnee's burden. *See Shelby County R–IV School District v. Herman,* 392 S.W.2d 609, 612 (Mo. banc 1965) (*"no evidence* of bad faith ... and therefore good faith [of the condemning authority] *is not a subject for our*

*consideration."*) (emphasis added); *School District of Clayton v. Kelsey,* 196 S.W.2d 860, 862 (Mo.1946) ("there is nothing in the record [other than the disparity] that would justify overturning the ruling on the theory that the condemnation was not in good faith...."); *City of Blue Springs v. Central Development Association,* 684 S.W.2d 44, 49 (Mo.App.1984) ("if the $132,200 offer, which was based on an appraisal, turns out to be only half or one-fifth the value finally awarded, that *by itself* is no indication of bad faith.") (emphasis added); *State ex rel. State Highway Commission v. Cady,* 400 S.W.2d 481, 483 (Mo.App.1965), *appeal dismissed, cert. denied,* 385 U.S. 204, 87 S.Ct. 407, 17 L.Ed.2d 300 (1966) (evidence of an attempt to negotiate held sufficient to satisfy *condemnor's burden* of acting in good faith). Certainly, a substantial variance between the appraised value and the actual award can be evidence of a lack of good faith which can be weighed with all of the other events surrounding a taking of a private owner's land but such variance is not the sole evidentiary fact relevant to the question of "good faith." The cited cases cannot be reasonably construed to preclude other pertinent factors which are legitimate subjects for proof and accordingly are legitimate subjects for discovery on the issue of "good faith."

privilege has been substantially modified by Rule 56.01(b)(3), which provides that "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means" he may obtain discovery of documents prepared in anticipation of litigation. It is this new rule and its qualifying provisions that must be examined in determining whether the so called "work product" is discoverable. *Porter v. Gottschall,* 615 S.W.2d 63, 65–66 (Mo. banc 1981). Rule 56.01(b)(4)(b) [4] did not change the status of the documents sought in this case from work product, but provides a method by which, under circumstance such as those present here, such information may be subject to discovery. *Carthen v. Jewish Hosp. of St. Louis,* 694 S.W.2d 787, 791 (Mo.App.1985); *Willis v. Brot,* 652 S.W.2d 738, 739–40 (Mo.App.1983). Our rule reflects a new openness, which follows the trend to remove secrecy and eliminate the "dog eat dog" aspect of litigation from our system of justice.

To demonstrate that a "substantial need" exists, the party seeking discovery must show: 1) the importance of the materials to be discovered; 2) an inadequate alternative means of discovery; and 3) a lack of the substantial equivalent. 23 Am.Jur.2d *Depositions and Discovery* § 66 (1983).

> The elements of prejudice, hardship, or injustice contemplated by this exception to the rule exist where the party seeking discovery is, with due diligence, unable to obtain evidence of some material facts, events, conditions, and circumstances which the discovery will probably reveal, and where, because of this situation, the party is unable to prepare the case adequately for trial.

27 C.J.S. *Discovery* § 72 (1959). Thus a substantial need has been found and discovery allowed where: it will give a clue to relevant facts that cannot otherwise be found; the party seeking discovery can prove its case only by using information in the other party's possession; and where a deponent is an employee of an adverse party and a hostile or evasive witness so that his prior statement is needed for impeachment purposes to prevent undue hardship. 23 Am.Jur.2d, *supra;* 27 C.J.S., *supra.*

Without question the evidence necessary to demonstrate whether the requirements of *Weatherby* have been met is solely in the hands of the condemnor. In addition condemnor's appraisers typically (if not invariably) are prone to support condemnor and thus the opportunity for impeachment is an indispensable ingredient to provide fairness in these proceedings. If discovery were not allowed, relevant facts as to jurisdictional prerequisites could go undisclosed and the condemnee would be helpless to challenge the condemnor's bald assertion that it had complied with the jurisdictional requirements of the law.

It has been well stated that:

> [I]n nearly all condemnation cases good cause could justifiably and with reason be argued. The obligation in all condemnation cases is to render fairness to both the public and the condemnee; a condemnee is being dispossessed against his will; he merely seeks just compensation; to in any way limit the means that he might use to combat a condemnor's strength would seem unacceptable.

7 P. Rohan & M. Reskin, Nichols On Eminent Domain § 7.03[2][c] (1987). In addition, a Florida court has stated:

> Unlike litigation between private parties condemnation by any governmental authority should not be a matter of "dog eat dog" or "win at any cost".

\*    \*    \*    \*    \*    \*

---

**4.** Rule 56.01(b)(4)(b) states: "A party may discover by deposition the facts and opinions to which the expert is expected to testify." Rule 56.01(b)(3) begins with the language that "[s]ubject to the provisions of subdivision (b)(4) of this Rule...." While in light of *Carthen v. Jewish Hosp. of St. Louis,* 694 S.W.2d 787 (Mo.App.1985) and *Willis v. Brot,* 652 S.W.2d 738 (Mo.App.1983), it appears that the documents sought here may be described as work product, under our new rule it no longer means that the trial court exceeds its jurisdiction in ordering their discovery. *See e.g., State ex rel. Eggers v. Enright,* 609 S.W.2d 381, 382 (Mo. banc 1980); *State ex rel. McDonnell Douglas Corp. v. Gaertner,* 601 S.W.2d 295, 296 (Mo.App.1980).

Considering the nature of the condemnation proceedings, we hold that there is no violation of the essential requirements of law in compelling the [condemnor] to produce in advance of trial information bearing on the issue of "just" compensation.

\*    \*    \*    \*    \*    \*

We do not believe this procedure will place the [condemnor] at a disadvantage in trying its case. We can envisage no "unfairness" to [the] governmental agency. If the governmental unit or agency is seeking to effectuate the "summum bonum", as it should in every condemnation suit, there is no justification for cutting corners or being secretive to the possible detriment of the individual land owner whose property is being taken from him against his will.

It may be that the condemnor will derive an advantage by disclosing these pertinent matters prior to trial. It might develop that the condemnee, after learning the basis for the evaluation of his property, will decide to settle the issues without going to trial, thereby resulting in a "speedy and inexpensive determination" of the case.

*Shell v. State Road Department*, 135 So.2d 857, 861 (Fla.1961). This follows an apparent trend of the states to permit, for various reasons, discovery of this sort of information. *See, e.g., Crist v. Iowa State Highway Commission*, 255 Iowa 615, 123 N.W.2d 424 (1963); *State ex rel. Dept. of Transportation v. Grudnik*, 90 S.D. 571, 243 N.W.2d 796 (1976); *Barker v. Dunham*, 551 S.W.2d 41 (Tex.1977); *Utah Dept. of Transp. v. Rayco Corp.*, 599 P.2d 481 (Utah 1979).

In Missouri, the purposes of discovery are to eliminate concealment and surprise, aid litigants in determining the facts prior to trial, and to provide the parties with access to information necessary to develop their contentions and to present their respective sides of the issues framed by the pleadings. *State ex rel. Anheuser v. Nolan*, 692 S.W.2d 325, 328 (Mo.App.1985). In this connection we have stated that "[i]mpediments to the discovery of truth are afforded validity in relatively few instances in the common law," and claims of privilege are to be carefully scrutinized. *State ex rel. Chandra v. Sprinkle*, 678 S.W.2d 804, 807 (Mo. banc 1984). Relator has failed to demonstrate how the trial court erred or to show how else the owners are to question whether the negotiations were in good faith, if they are not entitled to compel the appearance of witnesses and the production of evidence at the hearing at which such matters are to be litigated and the question of court's jurisdiction to further proceed is to be decided. I do not believe relator has met *its burden* of clearly evidencing the usurpation of jurisdiction or act in excess of the same. *State ex rel. Tarrasch v. Crow*, 622 S.W.2d 928, 937 (Mo. banc 1981).

Finally, the majority's flouting of the crystal clear legislative intent contained in § 226.150, which mandates compliance with the relevant federal statutes, is especially distressing. We noted in *Weatherby* and there is no reasonable way to avoid the unambiguous statutory language that § 226.150 *"very specifically* states that the Commission shall comply with acts of congress or rules or conditions of agencies such as the Federal Highway Administration...." *Weatherby*, 527 S.W.2d at 341. (Emphasis added.) In overruling *Weatherby*, the majority misses the mark when it blithely and quite irrelevantly asserts it has found no evidence that *Congress* intended compliance with federal statutes be a condition precedent to condemnation in state courts.[5] *Ante*, at 357. The focal point of our inquiry should and must be whether

---

5. The majority attaches substantial weight to the fact that they are unable "to locate [any] case in these United States where a condemnee failed to collect a condemnation award by reason of withdrawal of federal funds." *Ante*, at 357. While there may in fact be *no reported case* in which federal funds have been withdrawn such an absence does not conclusively establish such a sanction has never been employed. It certainly is in the best interest of the Highway Commission to comply with the pertinent federal regulations in order to avoid risking the loss of federal monies. But more than that, the legislature has by statute specifically provided for compliance with federal guidelines.

*our legislature* intended compliance with 42 U.S.C. §§ 4651, 4652, and 4655 be a condition precedent to condemnation in *Missouri courts.* Clearly, the language "[t]he commission is hereby *directed to comply* with the provisions of any act of Congress," contained in § 226.150, makes conformance with federal regulations a prerequisite to condemnation in our State. The majority in its zeal to abandon the holding in *Weatherby* erroneously disregards the plain language of the statute and substitutes the *preference of this Court* for the *intention of the Missouri Legislature.* Such is not a proper exercise of the judicial function.

I would order that the preliminary rule and alternative writ be quashed.